**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PABLO I. VELARDE,<br><br>                                Plaintiff,<br><br>v.<br><br>ZUMIEZ, INC., and ZUMIEZ SERVICES, INC.,<br><br>                                Defendants. | Case No. 20-cv-1358-MMA (MDD)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 4] |

On May 6, 2020, Pablo I. Velarde ("Plaintiff") filed an action in Imperial County Superior Court against Zumiez, Inc. and Zumiez Services, Inc. (collectively, "Defendants"). *See* Doc. No. 1-2. On July 17, 2020, Defendants removed the action to the United States District Court for the Southern District of California. *See* Doc. No. 1. Defendants now move to dismiss for failure to state a claim or, alternatively, to compel arbitration. *See* Doc. No. 4. Plaintiff responded to the motion with "Plaintiff's consent and non-opposition to submit matter to binding arbitration [and] opposition to Defendants' motion to dismiss the Complaint." Doc. No. 6. Defendants did not file a reply. *See* Docket. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil

Local Rule 7.1.d.1.  *See* Doc. No. 11.  For the reasons set forth below, the Court **GRANTS** Defendants' motion to compel arbitration.

### I. BACKGROUND

Plaintiff's claim arises from an employment relationship between him and Defendants.  Defendants[1] hired Plaintiff as "Second Assistant Manager" on July 10, 2014.  Doc. No. 1-2 ("Compl.") ¶ 11.  Plaintiff worked under the supervision of a new store manager, Andrew Lemos ("Lemos").  *See id.* ¶ 12.  "From the start of Lemos' employment with Defendant[s], the store began to receive negative inventory scores because inventory started disappearing."  *Id.*  Defendants believed the inventory score was caused by an "internally-caused loss."  *Id.* ¶ 13.

Plaintiff explained to "Defendant[s'] agents" that being asked to include hats in the inventory counts caused stress because of the pressure to keep track of such items.  *See id.* ¶ 14.  Defendants did not take action to address Plaintiff's concerns.  *See id.* ¶ 14.  In late April 2018, Lemos confronted Plaintiff about his complaints.  *See id.* ¶ 15.  Plaintiff claims Lemos "made sinister and threatening remarks like, 'I heard you're complaining about the counts.'"  *Id.*  Subsequently, "Plaintiff received several unfair write-ups," which Plaintiff alleges were retaliation for his complaints.  *Id.*

On April 16, 2018, Plaintiff entered the store after hours to find his lost car keys.  *Id.* ¶ 16.  On April 18, 2018, "Plaintiff was approached and informed not to enter the store after hours."  *Id.* ¶ 18.  After explaining the situation, Plaintiff "did not receive a write up."  *Id.*

On May 2, 2018, Plaintiff arrived at work and informed Defendants that he was feeling sick.  *See id.* ¶ 17.  Because Plaintiff usually has a coworker during shifts, "Plaintiff felt that he could push through his illness because he would have help with the

---

[1] Plaintiff notes that "[e]ach reference in this complaint to 'Defendant' and/or 'Defendants' refers to Zumiez, ZSI, and also refers to all Defendants sued under fictitious names, jointly and severally." Compl. ¶ 5.  In light of the imprecise pleading, the Court opts to refer to "Defendants" throughout this background section.

arduous closing procedures." *Id.* ¶ 18.  However, Plaintiff's health declined during his shift and his coworker did not come to work.  *See id.* ¶ 18.  Plaintiff informed Lemos about his health and lack of assistance.  *See id.*  "Defendant[s'] agent did not provide Plaintiff with an accommodation or assistance of any sort.  Moreover, Defendant[s'] agent even acted as if Plaintiff wasn't sick."  *Id.*  Several days later, "Lemos asked Plaintiff about the incomplete inventory procedure checklist from May 2, 2018."  *Id.* ¶ 19.  Plaintiff reminded Lemos that he was sick and lacked assistance.  *See id.*  "Lemos appeared to understand and informed Plaintiff that he was not going to write him up because he knew he was sick."  *Id.*

On May 9, 2018, Lemos wrote-up Plaintiff for his performance on May 2.  *See id.* ¶ 20.  Lemos "gave Plaintiff a final warning and placed him on probation."  *Id.*  The document failed to mention Plaintiff's "health condition."  *Id.*  Lemos also never notified or provided the document to Plaintiff, and the document lacked Plaintiff's signature.  *See id.*  Plaintiff alleges that "this document is a falsified write up created as a pretext to justify Plaintiff's wrongful termination."  *Id.*  On May 26, 2018, Plaintiff expected to be interviewed by his direct manager.  *See id.* ¶ 21.  However, "Plaintiff was falsely accused of stealing and was terminated as a result."  *Id.*

Plaintiff brought eight causes of action against Defendants.  Defendants now move to dismiss for failure to state a claim or, alternatively, to compel arbitration.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4.  Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.  *Id.*  The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements.  *AT&T Mobility v.*

*Concepcion*, 563 U.S. 333, 339 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.*

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also* 9 U.S.C. § 4. If the Court finds that the answers to both questions are "yes," then the Court must compel arbitration. *Chiron Corp.*, Inc., 207 F.3d at 1130. A court's circumscribed role in making these inquiries "leav[es] the merits of the claim and any defenses to the arbitrator." *Id.* (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).

As to the first inquiry—whether the parties agreed to arbitrate—courts adopt a standard similar to summary judgment. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In assessing whether there is an agreement to arbitrate, the presumption and policy in favor of arbitration do not apply, and instead, the issue is determined through standard contract law principles. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002).

As to the second inquiry—whether the agreement encompasses the dispute at issue—courts resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Moreover, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Absent contractual ambiguity, "it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House, Inc.*, 534 U.S. at 289.

### III. DISCUSSION

In addition to arguing that Plaintiff fails to state a claim, Defendants "request that this Court enforce the Parties' executed arbitration agreement according to its terms by ordering Plaintiff's claims to arbitration and dismissing this case." Doc. No. 4-1 at 9. Plaintiff responds that "[h]ad Defendants engaged in a meaningful meet and confer conference, then Defendants would have discovered that Plaintiff consents to move this matter to binding arbitration consistent with the parties' arbitration agreement." Doc. No. 6 at 8. Thus, Plaintiff also "requests that the Court order this matter to binding arbitration consistent with the Parties' agreement to arbitrate." *Id.*

The first inquiry in whether to compel arbitration is "whether a valid agreement to arbitrate exists." *Kilgore*, 718 F.3d at 1058 (quoting *Chiron Corp.*, 207 F.3d at 1130). Defendants argue that there is an arbitration agreement between the parties.[2] *See* Doc.

---

[2] As a threshold matter, the Court finds that the employment relationship "involve[ed] commerce" under § 2 of the FAA because Defendants declare the following: "Zumiez is an American multinational specialty clothing store," "has multiple retail stores in each of the fifty United States," "maintains an online retail store and ships products throughout the United States, including across state borders," and

No. 4-1 at 21. "Plaintiff concedes that a valid arbitration agreement exists between the parties . . . ." Doc. No. 6 at 10. Therefore, given the agreement between the parties, the Court finds that there is a valid arbitration agreement.

The second inquiry in whether to compel arbitration is "whether the agreement encompasses the dispute at issue." *Kilgore*, 718 F.3d at 1058 (quoting *Chiron Corp.*, 207 F.3d at 1130). Defendants argue that the arbitration agreement "explicitly encompasses all eight claims in Plaintiff's Complaint." Doc. No. 4-1 at 21. Plaintiff responds that he "agrees that [his] claims are subject to binding arbitration . . . ." Doc. No. 6 at 10. Therefore, given the agreement between the parties, the Court finds that the arbitration agreement encompasses the dispute at issue.

Accordingly, because the parties agree that the Court should compel arbitration, the Court finds that the parties should be compelled to arbitrate Plaintiff's claims. However, the parties disagree on whether to dismiss or stay the action. Defendants prefer dismissal; Plaintiff prefers a stay. *Compare* Doc. No. 4-1 at 28–29, *with* Doc. No 6 at 10–11. "[O]nce a court determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration." *Delgadillo v. James McKaone Enterprises, Inc.*, No. 1:12-cv-1149 AWI MJS, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012). Given that the parties agree that all of Plaintiff's claims are subject to arbitration, *see* Doc. No. 4-1 at 21; Doc. No. 6 at 10, the Court finds dismissal appropriate. *See Delgadillo*, 2012 WL 4027019, at *3 (dismissing an action where "all remaining claims"

---

"purchases goods from manufacturers throughout the United States." Wendte-Lahren Decl., Doc. No. 4-2 ¶¶ 3–6; *see CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1101 (C.D. Cal. 2015); *Montes v. San Joaquin Cmty. Hosp.*, No. 1:13-cv-01722-AWI-JLT, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014) (finding that an employment agreement with a hospital fell under the FAA where the hospital cared for patients who reside outside of California and "obtain[ed] supplies, equipment and medication from outside of California"); *Abdullah v. Duke Univ. Health Sys., Inc.*, No. 5:09-cv-8-FL, 2009 WL 1971622, at *3 (E.D.N.C. July 8, 2009).

were subject to arbitration and the plaintiff did not address the defendant's dismissal request).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to compel arbitration. Therefore, the Court **ORDERS** the parties to arbitrate Plaintiff's claims and **DISMISSES** this action. The Court declines to rule on Defendants' motion to dismiss for failure to state a claim. The Court **DIRECTS** the Clerk of Court to close the case.

**IT IS SO ORDERED**.

Dated: August 21, 2020

*[signature]*
HON. MICHAEL M. ANELLO
United States District Judge